UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GARY G.,

                      Plaintiff,

v.                                                                                        1:20-CV-1261
                                                                                          (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

APPEARANCES:                                                      OF COUNSEL:

LACHMAN & GORTON                                          PETER A. GORTON, ESQ.
  Counsel for Plaintiff
1500 East Main St.
P.O. Box 89
Endicott, NY 13760

U.S. SOCIAL SECURITY ADMIN.                          VERNON NORWOOD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 22.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is granted to the extent it seeks remand for further proceedings, and the Commissioner's motion is denied.

**I.    RELEVANT BACKGROUND**

    **A.    Factual Background**

Plaintiff was born in 1988. (T. 61.) He received a GED. (T. 46.) Generally, Plaintiff's alleged disability consists of anxiety, attention deficit hyperactivity disorder ("ADHD"), and bipolar disorder. (T. 61.) His alleged disability onset date is December 5, 2013. (*Id.*)

    **B.    Procedural History**

On May 1, 2017, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 73.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 21, 2019, Plaintiff appeared before the ALJ, Laureen Penn. (T. 33-60.) On April 25, 2019, ALJ Penn issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-32.) On July 14, 2020, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

    **C.    The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-29.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 1, 2017. (T. 17.) Second, the ALJ found Plaintiff had the severe impairments of: bipolar II disorder; agoraphobia; borderline personality disorder; post-traumatic stress disorder; personality disorder; major depressive disorder; anxiety disorder; ADHD, predominantly inattentive type; social anxiety disorder; insomnia; and generalized anxiety disorder. (T. 17-18.) Third, the ALJ found Plaintiff

did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 19.)  Fourth, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with additional non-exertional limitations.  (T. 22.)  The ALJ found Plaintiff can perform simple, routine, repetitive work in an environment with few, if any, workplace changes; can make only simple work-related decisions; can frequently interact with supervisors and coworkers; can have frequent contact with the public but cannot provide direct customer service; and he cannot perform tasks involving fast paced production.  (*Id*.)  Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 28.)

II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

   A.     **Plaintiff's Arguments**

Plaintiff makes three arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ made "plainly incorrect and/or misleading factual findings and associated legal errors" in assessing Plaintiff's psychiatric limitations.  (Dkt. No. 17 at 8-19.)  Second, Plaintiff argues the ALJ improperly assessed the medical opinion evidence.  (*Id*. at 19-27.)  Third, and lastly, Plaintiff argues the Commissioner did not sustain his step five burden.  (*Id*. at 27.)

   B.     **Defendant's Arguments**

In response, Defendant makes three arguments.  First, Defendant argues substantial evidence supports the ALJ's RFC determination.  (Dkt. No. 20 at 13-15.)  Second, Defendant argues the ALJ properly assessed the medical opinion evidence of

record.  (*Id*. at 15-18.)  Third, and lastly, Defendant argues Plaintiff retained the RFC to perform work that exists in significant numbers in the national economy.  (*Id*. at 18-21.)

## III.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV. ANALYSIS

### A. Medical Opinion Evidence

Plaintiff argues the ALJ erred in his assessment of the all the medical opinions in the record. (Dkt. No. 17 at 19-27.) Plaintiff essentially argues the ALJ failed to properly articulate the "persuasiveness" and "consistency" factors in her discussion. (*Id*.) For the reasons outlined below, remand is necessary for a proper evaluation of the medical opinion evidence in the record.

Under 20 C.F.R. § 416.920c the ALJ must articulate how he or she considered certain factors in assessing medical opinions. *See* 20 C.F.R. § 416.920c(a)-(c). The regulatory factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors of its own to consider), (4) specialization, and (5) other factors. *Id*. § 416.920c(c). An ALJ must explain his or her approach with respect to the first two factors when considering a medical opinion but need not expound on the remaining three. *Id*. § 416.920c(b). The ALJ is tasked with analyzing medical opinions at the source-level, meaning that the ALJ need not discuss each and every medical opinion in the record, and may apply the factors holistically to a single medical source. *Id*. § 416.920c(b)(1). These rules do not apply to the ALJ's analysis or consideration of nonmedical sources. *Id*. § 416.920c(d).

Plaintiff argues the ALJ failed to consider the findings and opinions of Marc Gaudette, Psy.D., A.B.D., Neuropsychologist. (Dkt. No. 17 at 19-20.) Plaintiff argues the ALJ's error was harmful because Dr. Gaudette's examination and opinion supported additional mental limitations which the ALJ failed to include in the RFC. (*Id*. at 19.) For the reasons outlined below, remand is necessary for a proper assessment of Dr. Gaudette's opinion and subsequent findings.

In 2018, Steuben County Mental Health referred Plaintiff for a neuropsychological evaluation. (T. 1100.) On two occasions Dr. Gaudette examined Plaintiff and administered testing. (T. 1100-1110.) Based on his examinations and test results Dr. Gaudette provided "impressions and recommendations." (T. 1107-1110.) In part, Dr. Gaudette concluded Plaintiff's attention and ability to attend to information through short timeframes ranged from "average to high average to superior;" however, Plaintiff had "a clear attentional disorder" on the "challenging continuous performance test." (T. 1107.) Dr. Gaudette opined Plaintiff's poor performance was "most likely secondary to the effects of ADHD." (*Id*.) Dr. Gaudette opined that "[o]verall, [Plaintiff's] focused attention is fine within the context of short timeframe, while, in contrast, attentional disorders are noted under longer and more demanding conditions." (*Id*.)

Regarding Plaintiff's memory, Dr. Gaudette opined Plaintiff had "average to superior" working memory. (T. 1107.) The doctor also opined Plaintiff had "high average and superior" psychomotor/processing speed. (T. 1108.) The doctor noted Plaintiff's language was within normal limits. (*Id*.) Dr. Gaudette opined that "outside of some attentional problems, [Plaintiff's] cognitive functioning is clearly good and a strength in his overall biopsychosocial picture." (*Id*.)

Dr. Gaudette stated Plaintiff's primary "disability" was "mental health issues." (T. 1109.) The doctor indicated it was important to note that, based on testing, Plaintiff had an "elevation on two negative impression management scales, indicating the possibility of some (perhaps intentional) exaggeration of complaints and problems." (*Id*.) The doctor concluded there was "some evidence to suggest that [Plaintiff] may be consciously or unconsciously magnifying his problems. The magnification of mental

7

health issues may not be due to some malicious or nefarious reason, but due to making sure that clinicians really appreciate his distress." (*Id*.)

Lastly, Dr. Gaudette noted Plaintiff had "significant elevation" in the area of antisocial features. (T. 1109.) Dr. Gaudette opined antisocial features were most likely due to ADHD and acting impulsively, and Plaintiff did not meet the diagnosis criteria of antisocial personality disorder. (*Id*.)

Although the ALJ took portions of Dr. Gaudette's findings into consideration, the ALJ failed to articulate how she assessed his overall opinion. To be sure, the ALJ noted Dr. Gaudette's November 2018 neuropsychological evaluation. (T. 26.) Specifically, the ALJ considered the doctor's observation that Plaintiff was "somewhat fidgety," but otherwise had unremarkable behavior and a pleasant mood. (*Id*.) The ALJ also noted exam results which contained a score suggestive of attempting to malinger a mental disorder and possible exaggeration of complaints and problems. (*Id*.) Lastly, the ALJ noted Dr. Gaudette's various mental health diagnosis. (*Id*.) In her step three analysis, the ALJ referenced Dr. Gaudette's finding that Plaintiff had "some tendency to be inattentive or impulsive under 'longer and more demanding conditions.'" (T. 20.) The ALJ's decision contains no further discussion of the doctor's findings or opinions.

Remand is necessary because the ALJ failed to articulate how she considered the factors in 20 C.F.R. § 416.920c in assessing Dr. Gaudette's opinion. Indeed, the ALJ did not assess the opinion at all. The regulations make clear when considering a medical opinion, the ALJ "must explain her approach" with respect to the supportability and consistency of the opinion. 20 C.F.R. § 416.920c(b). The articulation requirements should allow a reviewer to "trace the path" of the ALJ's reasoning. *Revisions to Rules*

*Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01; *see also Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) ("Although the ALJ did not describe in detail her rationale, we can infer from the decision that she attributed 'great weight' to the opinion because she found it most consistent with the record as a whole."). Although the ALJ noted portions of the doctor's opinion in her step three analysis, a review the ALJ's decision does not allow the Court to "trace the path" of the ALJ's reasoning.

Further, the ALJ appears to have misread, or read out of context, the portions of Dr. Gaudette's opinion she highlighted in her decision. The ALJ noted exam results which contained a score suggestive of attempting to malinger a mental disorder and possible exaggeration of complaints and problems. (T. 26.) However, as outlined above, the doctor concluded there was "some evidence to suggest that [Plaintiff] may be consciously or unconsciously magnifying his problems. The magnification of mental health issues may not be due to some malicious or nefarious reason, but due to making sure that clinicians really appreciate his distress." (*Id*.) Therefore, although the doctor noted evidence of malingering based on testing results, he indicated Plaintiff may, or may not, be intentionally magnifying his problems.

Moreover, other opinion evidence in the record is consistent with Dr. Gaudette's opinion. Consultative examiner, Andrew Cole, Psy.D. examined Plaintiff in August 2017. (T. 304.) Dr. Cole opined Plaintiff had "mild limitations" in his ability to understand simple instructions; however, Plaintiff had "marked limitations" in his ability to "sustain concentration." (T. 306-307.) Dr. Cole's opinions are consistent with Dr. Gaudette's opinions that although Plaintiff could focus attention and attend to information through short timeframes, he was prone to being "inattentive and impulsive"

under longer and more demanding conditions.  (T. 1107.)  The ALJ concluded Dr. Cole's marked limitations were inconsistent with the doctor's examination during which time Plaintiff showed intact attention, concentration, and memory, and other normal objective findings.  (T. 27.)  Treating provider, Shirley Wright, completed a form for Steuben County in which she answered "yes" to whether Plaintiff had "frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner in work, home or school setting."  (T. 608.)  The ALJ found Ms. Wright's statement "less persuasive," concluding the statements were remote, vague, inconsistent with routine and conservative treatment.  (T. 27.)  However, the ALJ failed to discuss the above opinions' consistency with Dr. Gaudette's findings or each other.  Overall, the opinions in the record consistently concluded Plaintiff had a greater degree of difficulty in maintaining prolonged concentration than provided for by the ALJ.

The ALJ discounted Dr. Cole's and Ms. Wright's opinions of Plaintiff's difficulty in concentration based on "no serious ongoing objective findings" and "routine and conservative mental health treatment."  (T. 20, 23, 25, 26, 27.)  However, "[i]t would be improper to rely on these mental status evaluations to conclude that [Plaintiff] is capable of prolonged concentration while simultaneously ignoring the contrary conclusion of the very physicians who made the evaluations."  *Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 11 (2d Cir. 2020).  Overall, the medical opinion evidence in the record supports greater limitations than provided for by the ALJ, the ALJ failed to evaluate the opinion of Dr. Gaudette and failed to properly evaluate the other opinion evidence in the record.  Therefore, remand is necessary.

### B.  Plaintiff's Remaining Arguments

Plaintiff argues the ALJ failed to properly assess Plaintiff's limitations in her step three determination.  (Dkt. No. 17 at 8-19.)  Specifically, Plaintiff asserts the ALJ relied on false and misleading interpretations of evidence in the record to support her conclusion Plaintiff had moderate limitations in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  (*Id*.)  Because remand is necessary for a proper evaluation of the medical opinion evidence in the record, and the ALJ relied on such evidence in her step three determination, a new step three analysis should also be conducted on remand.  Lastly, the ALJ will also need to make new findings related to what other work Plaintiff retains the ability to perform in the national economy and should consult a vocational expert for testimony if warranted by the findings on remand.

**ACCORDINGLY**, it is

    **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 17) is **<u>GRANTED</u>**; and it is further

    **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 20) is **<u>DENIED</u>**; and it is further

    **ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:    November 23, 2021

*Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge